2004 ND 153

**Roland C. RIEMERS, Plaintiff and Appellant,**

v.

**Jenese PETERS–RIEMERS, Michael L. Gjesdahl, and Gjesdahl & Dietz, PLLP, Defendants and Appellees.**

No. 20030353.

Supreme Court of North Dakota.

July 23, 2004.

Roland C. Riemers, pro se, Grand Forks, N.D., plaintiff and appellant.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, N.D., for defendants and appellees.

MARING, Justice.

[¶ 1] Roland Riemers appeals the dismissal with prejudice of his civil action [1] against Jenese Peters–Riemers (n/k/a Peters–Harris), his former wife, her attorney,

---

1. The notice of appeal is from the Memorandum Decision and Order Granting Defendants' Motion To Dismiss, which contains an order dismissing the action with prejudice. An order dismissing an action with prejudice involves the merits of an action and is appealable under N.D.C.C. § 28–27–02(5). *See Zimmerman v. Newton,* 1997 ND 197, ¶ 6 n. 2, 569 N.W.2d 700; *Timmerman Leasing, Inc. v. Christianson,* 525 N.W.2d 659, 660 n. 1 (N.D. 1994).

Michael Gjesdahl, and his law firm. We affirm.

[¶ 2] This appeal is one of many Riemers has filed related to his divorce from Peters–Riemers. *See Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, 630 N.W.2d 71 (affirming the dismissal of Riemers' application for a domestic violence restraining order); *Peters–Riemers v. Riemers*, 2001 ND 62, 624 N.W.2d 83 (affirming a domestic violence restraining order against Riemers); *Peters–Riemers v. Riemers*, 2002 ND 49, 641 N.W.2d 83 (affirming Riemers' eviction from the former marital residence); *Peters–Riemers v. Riemers*, 2002 ND 72, 644 N.W.2d 197, *cert. denied*, 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003) (affirming Riemers and Peters–Riemers' divorce judgment); *Peters–Riemers v. Riemers*, 2003 ND 96, 663 N.W.2d 657 (reversing a contempt order for failure to comply with property distribution in Riemers and Peters–Riemers' divorce judgment and reversing a money judgment); *Peters–Riemers v. Riemers*, 2004 ND 28, 674 N.W.2d 287 (reversing a contempt order for failure to pay child and spousal support and reversing a money judgment for the arrears); *Riemers v. O'Halloran*, 2004 ND 79, 678 N.W.2d 547 (affirming an order dismissing his action against the forensic accounting firm that testified at Riemers and Peters–Riemers' divorce proceedings); *Riemers v. Anderson*, 2004 ND 109, 680 N.W.2d 280 (affirming an order denying Riemers' motions for default judgment and summary judgment and dismissing his complaints, with prejudice, against persons involved in arresting and prosecuting him for assault of Peters–Riemers).

[¶ 3] Riemers commenced an action against Peters–Riemers, Gjesdahl, and Gjesdahl's law firm to recover damages for alleged torts occurring during his marriage and during his divorce proceedings which he alleged caused him injuries. He requested more than 200 million dollars in damages. The trial court summarized Riemers' claims as follows:

1.) [Riemers] alleges that his former wife, [Peters–Riemers], committed various torts against [Riemers] since 1997 including physical and emotional abuse (par. 3 of Complaint), intentional infliction of emotional distress by depriving [Riemers] of a relationship with his son Jonathan through attempts to alienate Jonathan from [Riemers] and depriving him of visitation with Jonathan (paragraph 3 of Complaint);

2.) [Riemers] alleges that [Peters–Riemers], Gjesdahl and Gjesdahl's law firm, under the doctrine of respondeat superior, knowingly, falsely and deliberately, conspired to give false testimony in the parties' divorce proceedings including a dishonest listing of debts and values to the court and a false portrayal of [Riemers] as [a] pornography addict who has committed adultery during his marriage all with the intent to inflame the court against [Riemers], thus preventing [Riemers] from having a fair hearing, and for the financial and legal gain of [Peters–Riemers], Gjesdahl, and the law firm (paragraphs 3, 5 and 8 of Complaint) and abused the judicial process for financial and legal gain of [Peters–Riemers], Gjesdahl, and the law firm (paragraphs 3, 5 and 8 of Complaint);

3.) [Riemers] alleges that Gjesdahl and the law firm deliberately delayed settlement of issues between [Riemers] and [Peters–Riemers] (paragraph 6 of Complaint) and that Gjesdahl and the law firm are guilty of knowing deceit and collusion or consented to deceit and collusion with the intent

to deceive or commit fraud on [the] court and others in violation of N.D.C.C. § 27–13–08.

[¶ 4] The trial court granted summary judgment to Peters–Riemers, Gjesdahl, and Gjesdahl's law firm and dismissed Riemers' action with prejudice. The trial court concluded that: 1.) Riemers' claims against Peters–Riemers are barred by collateral estoppel and res judicata, and any claims Riemers has regarding visitation are under the continuing and exclusive jurisdiction of the trial court for the divorce proceedings; 2.) Riemers' claims against Peters–Riemers, Gjesdahl, and Gjesdahl's law firm for conspiracy to give false testimony and abuse of process were not supported by facts sufficient to survive summary judgment; any allegation regarding perjured testimony at the divorce proceedings may not be collaterally attacked by Riemers; no civil action for damages will lie for perjury; Riemers failed to establish competent admissible facts to prove a civil action for conspiracy to commit perjury; Riemers' claim of abuse of process is barred by collateral estoppel and res judicata because the contempt order for which he was jailed was already fully litigated and appealed; his argument regarding abuse of process was not supported by sufficient facts in his affidavits; and 3.) Riemers' claims against Gjesdahl and his law firm are conclusory and unsupported factually; Riemers' affidavits in response to the defendants' motion are conclusory and contain no facts supporting his claims of deceit and collusion; Gjesdahl lied to the court and the United States Immigration Service; he allowed or encouraged Peters–Riemers to lie in the divorce proceedings; and he abused the judicial process.

[¶ 5] The trial court denied Riemers' request for a 30–day continuance to amend his complaint and a 90–day continuance to conduct further discovery, concluding that Riemers had sufficient time to present his evidence pertinent to the motion for summary judgment.

[¶ 6] Riemers now appeals the order dismissing his action with prejudice against Peters–Riemers, Gjesdahl, and Gjesdahl's law firm.

I

 [¶ 7] Our standard of review for granting a summary judgment is as follows:

> Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

> A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e). Nor may a party merely reassert the allegations in his pleadings in order to defeat a summary judgment motion.

*Zuger v. State*, 2004 ND 16, ¶¶ 7, 8, 673 N.W.2d 615 (citations and quotations omitted).

## II   Riemers' Claims Against Peters–Riemers

### A.   Emotional and Physical Abuse

[¶ 8] Riemers argues his claims against Peters–Riemers for emotional and physical abuse are not barred by res judicata or collateral estoppel. He contends these issues against Peters–Riemers were not addressed because Judge Backes "flipped through" the pleadings and failed to properly review them. He also argues he did not admit to assaulting Peters–Riemers when he pled guilty to the criminal charge, but submitted an Alford plea. We disagree.

[¶ 9] Courts bar relitigation of claims and issues to promote the finality of judgments, which increases certainty, discourages multiple litigation, wards off wasteful delay and expense, and conserves judicial resources. *Riemers*, 2004 ND 109, ¶ 12, 680 N.W.2d 280 (quoting *Ohio Cas. Ins. Co. v. Clark*, 1998 ND 153, ¶ 23, 583 N.W.2d 377). "[C]ollateral estoppel, or issue preclusion, generally forecloses the relitigation in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Riemers*, 2004 ND 109, ¶ 12, 680 N.W.2d 280 (quoting *Reed v. University of N.D.*, 1999 ND 25, ¶ 9, 589 N.W.2d 880 (quotation omitted)). An issue must satisfy four tests before collateral estoppel will bar relitigation of that issue in a new proceeding: "(1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?" *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D. 1992).

[¶ 10] In Riemers and Peters–Riemers' divorce proceedings, Riemers alleged that Peters–Riemers had committed domestic violence against him and that his actions were in self-defense. In the trial court's Findings of Fact and Conclusions of Law, dated May 4, 2001, it specifically found:

10. In the fall of 1996, [Peters–Riemers] became pregnant with the parties' son. A few months later, in February of 1997, [Peters–Riemers] learned of [Riemers'] physical relationship with [another woman]. A physical argument erupted. During the course of such incident, [Riemers] slapped and punched [Peters–Riemers]. He also kicked her in the stomach. Consequently, [Peters–Riemers] suffered vaginal bleeding and obtained medical treatment.

. . . .

15. In October of 1999, [Peters–Riemers] heard Johnathan crying outside. She walked out to discover that Johnathan had fallen down the stairs and had hurt himself. [Riemers] was standing a few yards away from Johnathan, talking on his phone instead of tending to his son. [Peters–Riemers] made an angry comment to [Riemers] about his priorities then went back inside. [Riemers] than came into the kitchen and slapped [Peters–Riemers] in the face.

16. During the marriage, [Riemers] kept pornographic magazines and videos in the marital residence, sometimes in places where Johnathan would encounter them. In January of 2000, [Peters–Riemers] destroyed one of [Riemers'] pornographic videos. When [Riemers] discovered his destroyed tape, he came up behind [Peters–Riemers] as she was making a bed and kicked her in the back.

17. On March 4, 2000, after a verbal argument, [Peters–Riemers] attempted to leave the marital residence with the parties' son, Johnathan. [Riemers] refused to allow her to leave with Johnathan, but attempted to force her out of her home alone. He pinned her left arm behind her back as she held Johnathan tight in her other arm. [Peters–Riemers] escaped long enough to call 911, but [Riemers] hung up the phone. He then punched her in the face, knocking her to the ground. He broke a finger in the process. [Peters–Riemers] was later diagnosed with a fractured bone in her face.

18. On March 6, 2000, [Peters–Riemers] obtained a Temporary Protection Order against [Riemers]. On March 7, 2000, [Riemers] was charged with felony assault as a result of striking [Peters–Riemers]. A No Contact Order issued as a condition of [Riemers'] Pretrial Release. After a fully contested hearing, [a]n Adult Abuse Protection Order issued against [Riemers] on March 14, 2000. At all of his appearances in the Protection Order proceeding, and at all times during this divorce, [Riemers] maintained that his striking [Peters–Riemers] on March 4, 2000 was in self-defense. Nevertheless, on October 6, 2000, [Riemers] pled guilty to the reduced charge of misdemeanor assault, admitting that a factual basis existed for that plea.

The trial court concluded:

19. [Riemers] committed at least one act of domestic violence which resulted in serious bodily injury to [Peters–Riemers]. During their relationship, there was a pattern of [Riemers] inflicting domestic violence upon [Peters–Riemers]. On occasion, [Peters–Riemers] may have struck, hit or scratched [Riemers]. However, her actions were largely in self-defense and were of a far less serious nature and degree than [Riemers'] domestic violence.

We, therefore, have a finding by the trial court that Riemers committed domestic violence against Peters–Riemers, but that Peters–Riemers did not commit domestic violence against Riemers. In *Peters–Riemers*, 2002 ND 72, ¶ 31, 644 N.W.2d 197, *cert. denied*, 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003), we affirmed the judgment of divorce, including the trial court's findings about whether Peters–Riemers committed domestic abuse against Riemers. In another suit, Riemers alleged he was falsely arrested for assault and his former wife Peters–Riemers should have been, but was not arrested. *See Riemers*, 2004 ND 109, ¶ 9, 680 N.W.2d 280. We concluded on appeal from that judgment that Riemers was collaterally estopped from relitigating those issues because they were addressed in the divorce judgment, which we had affirmed. *Id.* at ¶ 13.

[¶ 11] Riemers' allegations of Peters–Riemers' domestic abuse were also addressed when Riemers applied for protection orders against Peters–Riemers in both Traill and Grand Forks Counties. The Traill County District Court denied his application on March 7, 2000. The Grand Forks District Court also denied his August 31, 2000, application for a protection order against Peters–Riemers, which Riemers appealed. *Flattum–Riemers*, 2001 ND 121, 630 N.W.2d 71. A petition for domestic abuse is a civil action in which a party must prove by a preponderance of the evidence that an alleged violent household member inflicted domestic violence as it is defined in N.D.C.C. § 14–07–01(2) upon the petitioner or another household member. N.D.C.C. § 14–07–02. Section 14–07–01(2), N.D.C.C., defines domestic violence as:

"Domestic violence" includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

In Riemers' petition for protective relief against Peters–Riemers to the Grand Forks district court, he alleged among other things that:

[I]n March 1997, Peters–Riemers "charged after me several times with kitchen knives and attempted to kill" him while they lived together in Grand Forks. He stated police were summoned, Peters–Riemers was taken to a hospital, and although both were charged with offenses, those charges were dropped "[a]t our mutual insistence." Flattum–Riemers also alleged Peters–Riemers fractured several of his ribs during the summer of 1999, and in December 1999, she threatened him with a loaded revolver in his Buxton home. Police were again summoned, but no arrests were made. Flattum–Riemers also related a verbal and physical altercation on March 4, 2000, when Peters–Riemers attempted to leave the residence with the couple's son. Flattum–Riemers was arrested and charged with felony assault after that incident. According to Flattum–Riemers, the final incidents occurred during the summer of 2000, when she contacted him, berated him, and threatened to have him arrested for violating the domestic violence protection order.

*Flattum–Riemers,* 2001 ND 121, ¶ 3, 630 N.W.2d 71. A judicial referee denied and dismissed his petition because Riemers had not satisfied his burden to prove Peters–Riemers inflicted domestic violence upon Riemers. Riemers requested review by the Grand Forks District Court, which affirmed the judicial referee's decision.

[¶ 12] In Riemers' complaint in this case, he describes the abuse he alleges occurred:

That [Peters–Riemers] had a long history since 1997 of physically and mentally abusing Plaintiff including such things as threatening to kill him with a knife & gun; putting a loaded gun to his head; stopping their car in front of a freight train; hitting, scratching and tearing off his [clothes]; threatening to have him falsely arrested for rape; destroying or taking his personal property; falsely accusing him of pornography addiction, adultery and domestic abuse . . . .

[¶ 13] We have carefully examined each issue of abuse now raised by Riemers against Peters–Riemers, and we conclude that each identical issue was raised and decided against Riemers and in favor of Peters–Riemers in a prior proceeding.

[¶ 14] For collateral estoppel to apply, "only parties or their privies may take advantage of or be bound by the former judgment." *Hofsommer,* 488 N.W.2d at 384. Riemers and Peters–Riemers were both parties to all proceedings relevant to Riemers' current appeal; therefore, either may take advantage or be bound by the prior proceedings.

[¶ 15] Finally, Riemers had a fair opportunity to be heard on these issues in the divorce proceedings and two protection order proceedings. He had multiple opportunities to present testimony, evidence, and arguments regarding abuse by Peters–Riemers. We affirmed the trial court's conclusion in the divorce proceedings that Riemers committed domestic violence and that Peters–Riemers' actions were largely in self-defense and not domestic abuse. A final judgment on the merits, in the form of an amended divorce

judgment and two orders denying Riemers a protection order, decide all issues related to issues of abuse in this appeal. *Peters–Riemers,* 2002 ND 72, 644 N.W.2d 197, *cert. denied,* 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003); *Flattum–Riemers,* 2001 ND 121, 630 N.W.2d 71.

[¶ 16] In addition, we recently addressed the issue of domestic abuse in Peters–Riemers and Riemers' relationship again in *Riemers,* 2004 ND 109, 680 N.W.2d 280. In that case, Riemers sued the officials involved in his arrest and prosecution for assaulting Peters–Riemers. We concluded,

> In earlier litigation, the trial court had determined Riemers committed domestic violence and Peters–Riemers did not. In *Peters–Riemers v. Riemers,* 2002 ND 72, 644 N.W.2d 197, *cert. denied,* 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003), we affirmed a judgment dissolving the marriage of Riemers and Peters–Riemers. Riemers' domestic violence and Peters–Riemers' alleged domestic violence were addressed at length in the opinion. The trial court made findings about Riemers committing domestic violence against Jenese Peters–Riemers, in connection with the incident on March 4, 2000, which we held were supported by the evidence. *Id.* at ¶ 15, 644 N.W.2d 197.

*Riemers,* 2004 ND 109, ¶ 13, 680 N.W.2d 280.

[¶ 17] Therefore, we conclude the issues Riemers raises against Peters–Riemers for abuse are barred by collateral estoppel and the trial court did not err in dismissing his claims.

### B. Visitation Issues

[¶ 18] Riemers argues the trial court erred in granting summary judgment because he is entitled to a remedy under N.D. Const. art. I, § 9 for the "loss of consortium and the mental torture" suffered by Peters–Riemers' alleged denial of visitation with his son. He also argues he is entitled to recovery for intentional infliction of emotional distress resulting from Peters–Riemers depriving him of a relationship with his son through attempts to alienate him from Riemers. We disagree.

[¶ 19] "Except as otherwise provided in section 14–14.1–15, a court of this state which has made a child custody determination consistent with section 14–14.1–12 or 14–14.1–14 has exclusive, continuing jurisdiction over the determination...." N.D.C.C. § 14–14.1–13. Therefore, Riemers must bring his complaints to the court that made the custody and visitation determination regarding his son. In addition, Riemers has not cited any case law to support his constitutional claim, nor has he cited any case law to support his claim for intentional infliction of emotional distress due to lack of visitation. His affidavits also do not set forth facts that would support a cause of action for intentional infliction of emotional distress. *See Muchow v. Lindblad,* 435 N.W.2d 918, 923–24 (N.D. 1989) (holding a party must have competent evidence of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress" to support a claim of intentional infliction of emotional distress).

[¶ 20] We conclude the trial court did not err when it concluded that Riemers cannot attack the custody and visitation judgment in this action and that Riemers has failed to support his claim with competent evidence of the tort of intentional infliction of emotional distress.

### III Riemers' Complaints against Peters–Riemers, Gjesdahl, and Gjesdahl's Law Firm

[¶ 21] Riemers argues the court erred when it granted summary judgment to Peters–Riemers, Gjesdahl, and Gjesdahl's

law firm because civil suits for damages resulting from perjury in another proceeding should be allowed under the United States and North Dakota constitutional requirements of due process. The trial court concluded that North Dakota would follow other jurisdictions which have held that no civil action for damages lies for perjury.

[¶ 22] While our Court has not directly adopted this position, it has acknowledged that the general rule is that no civil action lies for perjury. *Hurt v. Freeland,* 1999 ND 12, ¶ 35, 589 N.W.2d 551. We have also pointed out that "[o]ther jurisdictions have uniformly held that a plaintiff may not, by claiming conspiracy, avoid the doctrine there is no civil action for perjury." *Id.* at ¶ 36 (quoting *Stolte v. Blackstone,* 213 Neb. 113, 328 N.W.2d 462, 466 (1982)).

■ [¶ 23] The remedy for perjury in North Dakota is a criminal action prosecuted by the State of North Dakota. *See* N.D.C.C. ch. 12.1 § 11. We adopt the doctrine that a litigant· cannot bring a civil action in tort for perjury.

■ [¶ 24] Although we have recognized a cause of action for a civil conspiracy to commit an unlawful act or to commit a lawful act by unlawful means, Riemers' affidavits do not provide competent, admissible evidence that would form a basis for liability or damages. *See Hurt,* 1999 ND 12, ¶ 37, 589 N.W.2d 551 (holding the essence of a civil conspiracy is the damages caused by the agreement between parties to inflict injury upon another). The district court properly dismissed Riemers' conspiracy claims.

■ [¶ 25] Riemers argues that Peters–Riemers, Gjesdahl, and Gjesdahl's law firm abused the judicial process for their financial and legal gain by pursuing contempt actions which resulted in his incarceration. The trial court concluded that this argument was barred by res judicata and collateral estoppel and that even if it were not barred, Riemers failed to produce evidence sufficient to survive summary judgment.

■ [¶ 26] We agree with the trial court that Riemers' claims are barred by res judicata. "Res judicata means that a valid, existing final judgment from a court of competent jurisdiction is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions." *Ohio Cas. Ins. Co.,* 1998 ND 153, ¶ 23, 583 N.W.2d 377. This claim is barred by res judicata as both contempt judgments were appealed and reversed by this Court because Riemers had not been advised of his right to counsel. *See Peters–Riemers,* 2004 ND 28, 674 N.W.2d 287; *Peters–Riemers,* 2003 ND 96, 663 N.W.2d 657.

IV Riemers' Claims Against Gjesdahl and his Law Firm

■ [¶ 27] Riemers argues the trial court erred granting summary judgment to Gjesdahl and his law firm because he provided sufficient facts showing that they deliberately delayed settlement of issues between Riemers and Peters–Riemers and that they are guilty of knowing deceit and collusion or consented to deceit and collusion with the intent to deceive or commit fraud on the court and others in violation of N.D.C.C. § 27–13–08.

[¶ 28] Section 27–13–08, N.D.C.C., provides:

Every attorney who:

1. Is guilty of any deceit or collusion or consents to any deceit or collusion with intent to deceive the court or any party;

2. Willfully delays his client's suit with a view to his own gain; or

3. Willfully receives any money or other property for or on account of any money or debt which he has not laid out or become answerable for,

is guilty of a class A misdemeanor and in addition forfeits to the party injured treble damages to be recovered in a civil action.

[¶ 29] Riemers' affidavits make only conclusory allegations such as, "[i]n 2002 when Gjesdahl and [Peters–Riemers] had me illegally jailed for debt (that I didn't even owe) for two and a half weeks, Gjesdahl admitted in court his plan was to get me in jail for debt for 6 months, and then, after I had fallen further in arrears on support, have me imprisoned for a felony under Federal law," and "[o]n several occasions in letters to me [Gjesdahl] has offered un-supervised visitation in exchange for paying his legal expenses for [Peters–Riemers]."

[¶ 30] The trial court found that Riemers failed to support his claims with any facts and that his affidavits contained only conclusory allegations. We agree with the trial court and conclude Riemers' allegations are not supported by any evidence sufficient to survive summary judgment.

V   Motions for Continuance

[¶ 31] On appeal, Riemers argues the trial court abused its discretion when it denied his motions for a 30–day continuance to amend his complaint and a 90–day continuance to conduct additional discovery pursuant to N.D.R.Civ.P. 56(f). We disagree.

[¶ 32] We will not reverse a trial court's denial of a motion for a continuance to amend a complaint unless the trial court abused its discretion. *Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439, 442 (N.D.1991). In addition, we will not reverse a trial court's denial of a motion under Rule 56(f) for a continu-

ance to conduct additional discovery unless the trial court abused its discretion. *Aho v. Maragos*, 1998 ND 107, ¶ 5, 579 N.W.2d 165. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Boehm v. Boehm*, 2002 ND 144, ¶ 6, 651 N.W.2d 672 (quoting *Fahlsing v. Teters*, 552 N.W.2d 87, 90 (N.D.1996)). Generally, the ability to request additional time to conduct discovery in order to respond to a motion for summary judgment is liberally applied.

[¶ 33] The trial court concluded that Riemers had a reasonable opportunity, more than the 30 days provided under N.D.R.Civ.P. 56, to present all material relevant to the summary judgment motion. The trial court stayed the discovery issues until the motion for summary judgment was resolved and explained to Riemers that if the motion was denied, it would address the discovery issues.

[¶ 34] In his request for a continuance, Riemers presented no argument as to why he should be granted a continuance. Similar to *Timmerman Leasing, Inc.*, 525 N.W.2d at 663, Riemers did not give, by affidavit, a good reason as to why he was unable to obtain an affidavit or other evidence in the more than four weeks before the hearing on the motion. Additionally, the facts relevant to this case have been litigated for approximately four years. Riemers should have had the necessary evidence or should have known where to get it because all of his claims relate to those actions. Therefore, the trial court did not abuse its discretion when it denied Riemers' motions for a 30–day or 90–day continuance.

VI   Sanctions

[¶ 35] On appeal, Peters–Riemers, Gjesdahl, and Gjesdahl's law firm move this Court under N.D.R.Civ.P. 11 for no less than $15,000 in sanctions. In addition, they request we enjoin Riemers from filing

any further actions against Peters–Riemers or Gjesdahl that are not signed by an attorney. Finally, they request we enjoin Riemers from filing any claim related to any issue or claim that has or could have been considered in any prior action.

[¶ 36] Peters–Riemers, Gjesdahl, and Gjesdahl's law firm argue Riemers violated N.D.R.App.P. 13, N.D.R.App.P. 38, and N.D.R.Civ.P. 11. They argue they are entitled to damages under those rules and under N.D.R.Civ.P. 54(e)(2), N.D.C.C. § 28–26–01, and N.D.C.C. § 28–26–31. Specifically, the Rule 11 Motion requests that our Court conclude by filing a Notice of Appeal, and commencing an appeal herein, Riemers violated Rule 11(b) of the North Dakota Rules of Civil Procedure.

[¶ 37] Rule 11(b), N.D.R.Civ.P., states: By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or are reasonably based on a lack of information or belief.

Under Rule 11(c), a court that determines a violation of subdivision (b) may impose sanctions upon parties responsible for the violation. N.D.R.Civ.P. 11(c).

[¶ 38] Rule 38, N.D.R.App.P., authorizes an award of costs, including reasonable attorney fees, for a frivolous appeal. "An appeal is frivolous under Rule 38, N.D.R.App.P., if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith." *Riemers*, 2004 ND 79, ¶ 16, 678 N.W.2d 547 (quotation omitted).

[¶ 39] We cannot conclude all of Riemers' arguments on appeal are so flagrantly groundless as to warrant the sanctions Peters–Riemers, Gjesdahl, and Gjesdahl's law firm request. Therefore, their request for monetary and injunctive sanctions is denied. However, this is the 9th appeal involving issues arising out of the parties' divorce. We have in other cases prohibited a party from filing any action against other individuals without permission from a district court judge as a sanction for violating Rule 11, N.D.R.Civ.P. *See Federal Land Bank of St. Paul v. Ziebarth*, 520 N.W.2d 51, 57 (N.D.1994). We have the authority to protect the public from those "who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive appeals and other proceedings." *Id.* at 58 (quoting *In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2nd Cir.1981)). The record in this case comes very close to a pattern of abuse of legal process.

## VII

[¶ 40] We find Riemers' remaining arguments without merit and affirm the trial court's order granting Peters–Riemers, Gjesdahl, and Gjesdahl's law firm sum-

mary judgment and dismissing Riemers' civil action.

[¶ 41] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, concur.

KAPSNER, Justice, concurring and dissenting.

[¶ 42] I concur with Justice Maring's analysis of the issues raised by Riemers in ¶¶ 1–34 of the majority opinion. That analysis, however, reveals the number of times Riemers has attempted to re-litigate the same issues to the detriment of the other parties and the judicial system. *See* particularly ¶¶ 8–17 of the majority opinion.

[¶ 43] Riemers has managed to state a single issue on which the Court has not previously affirmatively spoken, resulting in the majority opinion now clearly adopting the doctrine that a litigant cannot bring a civil action in tort for perjury. *See* ¶ 23 of the majority opinion.

[¶ 44] However, merely articulating an issue should not prevent sanctions under these circumstances. The trial court concluded, and we affirm, that Riemers' assertion of the claim was not supported by sufficient facts to survive summary judgment. Rather than being a reason not to sanction, the assertion of this "new" claim is actually another basis for sanctions under N.D.R.Civ.P. 11(b)(3).

[¶ 45] Reimers' repetitive assertions of previously decided claims and assertions of claims without evidentiary support are flagrant violations of N.D.R.Civ.P. 11(b). Therefore, I cannot join the majority in its disposition of the motion for sanctions. Rule 11 provides for sanctions that are either monetary or nonmonetary directives; both would be appropriate here. At minimum, I would prohibit Riemers from filing any further actions or motions naming Peters–Riemers as a party without explicit permission from a district judge, unless the sole request was to modify child support and the motion brought not less than one year after the last order dealing with child support. *See Federal Land Bank of St. Paul v. Ziebarth,* 520 N.W.2d 51, 57 (N.D.1994). Further, to assist the district judge in deciding whether the claims asserted were actually new claims not previously litigated, I would require Riemers to attach to his request for permission to file, a copy of every opinion cited by the majority opinion in which Riemers is a party.

[¶ 46] CAROL RONNING KAPSNER and WILLIAM A. NEUMANN, JJ., concur.