Filed 6/21/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 115

G.K.T., Plaintiff and Appellant

v.

T.L.T. and T.K., Defendants and Appellees

No. 20100381

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Gary H. Lee, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Charles L. Neff, P.O. Box 1526, Williston, ND 58802-1526, for plaintiff and appellant.

T.L.T. and T.K., defendants and appellees; no appearance.

G.K.T. v. T.L.T.

No. 20100381

VandeWalle, Chief Justice.

[¶1] 
G.K.T. appealed the district court’s judgment granting T.L.T.’s motion for summary judgment and dismissing his complaint against T.L.T. and T.K. for intentional infliction of emotional distress.  We affirm, concluding his claims against T.L.T. and T.K. do not rise to the level of extreme and outrageous conduct.

I.

[¶2] T.M.T. (“child”) was born in 1997 to T.L.T. and T.K., the child’s biological mother and father.  T.L.T. and T.K. did not have a continuing relationship.  G.K.T. moved to a house near T.L.T. and they became friends.  In 1998, they began to live together with the child, and they married in 2000.  G.K.T. adopted the child with T.K.’s consent in 2001.

[¶3] In 2007, G.K.T. and T.L.T. divorced; the court awarded T.L.T. primary residential responsibility and G.K.T. received parenting time.  According to G.K.T., the divorce occurred because T.L.T. tried to re-establish T.K.’s relationship with the child. In 2008, T.L.T. began a new relationship with T.K., who began to spend time with the child.  T.L.T, T.K., and the child attended a monster truck rally in Minot, T.K. took the child on camping, fishing, and snowmobiling trips, and the child attended events with T.K. and T.K.’s family.

[¶4] G.K.T. believed his relationship with his adopted child deteriorated because of the new relationship between T.L.T. and T.K, whom he sued for intentional infliction of emotional distress.  He claimed T.L.T. and T.K. tried to “spoil and ruin [his] father-daughter relationship.”  G.K.T. asserted, as a result, that he “lost the love and affection of his daughter who is now acting in a hateful manner towards [him by] stating [he] is not her father.” G.K.T. asserted that T.L.T. and T.K. acted outrageously, causing him to experience severe emotional distress.  G.K.T. claims to have lost sleep, experienced heartache and stress, and lost his job as a result of his emotional distress.

[¶5] Pending trial, both G.K.T. and T.L.T. were deposed.  At G.K.T.’s deposition, he explained that T.L.T. had threatened to tell the child that he was not her father.  Further, G.K.T. also asserted that T.L.T. told the child that G.K.T. was not her father.  At T.L.T.’s deposition, she stated she had a verbal agreement with T.K., at the time of his consent to G.K.T.’s adoption of the child, to eventually re-establish a relationship between him and the child.  T.L.T. claimed she never threatened to interfere with the relationship between G.K.T. and the child; rather, she informed the child she had two fathers.

[¶6] T.L.T. moved for summary judgment, claiming intentional infliction of emotional distress should not be recognized as an actionable tort in North Dakota under these circumstances, that is, where the quality of the parent-child relationship is the basis for the action.  Alternatively, T.L.T. claimed G.K.T. would not have been able to establish her actions as extreme or outrageous, or that G.K.T. suffered severe emotional distress.  The trial court granted T.L.T.’s motion for summary judgment and dismissed the case, finding, as a matter of law, that “there is no tort for the intentional infliction of emotional distress when it is alleged that one parent has alienated a child’s affections against the other parent.”

II.

[¶7] G.K.T. argues the district court erred in granting summary judgment in favor of T.L.T. and T.K. because it did not consider the differences between the elements of intentional infliction of emotional distress and the elements of alienation of affections in a parent-child relationship.  He also argues the district court erred as a matter of law by failing to recognize intentional infliction of emotional distress as an actionable tort in North Dakota where the quality of the parent-child relationship is the basis for the action.  For the purpose of this opinion only, we assume, without deciding, that intentional infliction of emotional distress is an actionable tort in North Dakota where the quality of the parent-child relationship is the basis of the action, and hold that G.K.T. has failed to show the defendants’ conduct is sufficiently extreme and outrageous to withstand a motion for summary judgment.

[¶8] A district court properly grants summary judgment “if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.”  
Lucas v. Riverside Park Condominium Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801.  “A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.”  
Id.
  The district court must view the evidence “in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence.”  
Kautzman v. McDonald
, 2001 ND 20, ¶ 16, 621 N.W.2d 871.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.  
Riemers v. Peters-Riemers
, 2004 ND 153, ¶ 7, 684 N.W.2d 619.

[¶9] In 
Muchow v. Lindblad
, 435 N.W.2d 918 (N.D. 1989), we explained the tort of intentional infliction of emotional distress consists of three elements: “(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress.”  
Id.
 at 923-24 (relying on Restatement of Torts 2d § 46 (1965)).  We adopted the standard a district court should use to assess a claim of intentional infliction of emotional distress.  The district court must first determine if, as a matter of law, the defendant’s conduct is sufficiently extreme and outrageous to permit recovery.  
Id.
 at 924 (quoting Comment h. of the Reporter’s Notes of § 46).  But if the district court determines that reasonable people could differ, the question of whether the defendant’s conduct is sufficiently extreme and outrageous is left to the trier-of-

fact.  
Id.

[¶10] Here, the extreme and outrageous conduct alleged by G.K.T. is insufficient, as a matter of law, to withstand a motion for summary judgment.  G.K.T. essentially claims T.L.T. and T.K. destroyed his relationship with his daughter.  Specifically, he asserts that the child’s mother acted outrageously by fostering a relationship between the child and T.K.  G.K.T. asserts the mother also acted outrageously when she threatened to tell the child that G.K.T. was not her father, and actually told the child G.K.T. was not her father.  The mother, however, asserted that she told the child that the child had two fathers—G.K.T. and T.K.  Additionally, G.K.T. asserts T.K. acted outrageously by taking the child to a monster truck rally in Minot, taking the child on camping, fishing, and snowmobiling trips, and taking the child to attend events with T.K. concerning T.K.’s family.

[¶11] This is not the type of conduct proscribed by the outrageous-conduct standard; reasonable people could not differ as to whether T.K. and T.L.T.’s conduct was extreme and outrageous.  In 
Muchow
, we explained the strenuously high “beyond all possible bounds of decency” standard of what is outrageous conduct:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by “malice,” or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go 
beyond all possible bounds of decency
, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, “Outrageous!”

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one’s feelings are hurt.    

Id.
 at 924 (quoting Comment d. of the Reporter’s Notes of § 46) (emphasis added); 
compare
 
Swenson v. Northern Crop Ins., Inc.
, 498 N.W.2d 174, 182 (N.D. 1993) (majority) (holding that reasonable people could differ as to whether an employer acted with sufficient outrageousness when the employer allegedly discriminated against and oppressed a female employee because of her gender) 
with
 
id.
 at 190 (VandeWalle, C.J., concurring and dissenting) (“I have a great concern that the precedent established by the majority significantly expands the scope of the tort . . . in cases involving conduct society considered as being unacceptable but not meeting the 
Muchow
 definition as it was heretofore understood.”)

[¶12] Further, cases after 
Muchow
 have re-emphasized the strenuous requirements of the “beyond all possible bounds of decency” standard.  In 
Reimers
, the plaintiff alleged his former spouse acted outrageously by depriving him of a relationship with his son.  
Id.
, 2004 ND 153, ¶ 18.  We held the plaintiff did not provide facts sufficient to support a claim for intentional infliction of emotional distress.  
Id.
 at ¶ 19 (citing 
Muchow
, 435 N.W.2d at 923-24).

[¶13] In 
Zuger v. State
, 2004 ND 16, 673 N.W.2d 615, the plaintiff alleged a prospective employer acted outrageously by choosing not to interview him because his ranking was below the required level of the employer.  
Id.
 at ¶¶ 3, 15.  The employer, a state agency, used a scoring device that gave credit for factors contained in a position information questionnaire, which the plaintiff alleged was not made available to him.  
Id.
  After emphasizing that it is not enough “that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress,” we held the plaintiff failed to show the agency’s actions were sufficiently extreme and outrageous as to support an action for intentional infliction of emotional distress.  
Id.
 at ¶ 15.

[¶14] In 
Vandall v. Trinity Hospitals
, 2004 ND 47, 676 N.W.2d 88, a physician alleged he was the victim of retaliation after he learned of a colleague’s deficient level of medical treatment and attempted to address the issue through the hospital’s internal procedures.  
Id.
 at ¶ 2.  He claimed, among other conduct, that instigating a censure proceeding against him and failing to re-appoint him to hospital committees amounted to extreme and outrageous conduct.  
Id.
 at ¶ 2.  After emphasizing that “the threshold element of extreme and outrageous conduct is narrowly limited to outrageous conduct that exceeds all possible bounds of decency,” we held that the physician’s claims of retaliation could not be regarded as “atrocious and utterly intolerable in a civilized community.”  
Id.
 at ¶¶ 29, 30 (relying on 
Dahlberg v. Lutheran Social Services
, 2001 ND 73, ¶ 19, 625 N.W.2d 241).

[¶15] In 
Hougum v. Valley Memorial Homes
, 1998 ND 24, 574 N.W.2d 812, the plaintiff’s employment as a chaplain was terminated after he pleaded guilty to disorderly conduct for masturbating in a department store toilet stall.  
Id.
 at ¶¶ 2, 4.  He claimed the person who observed him acted outrageously by deliberately inspecting him through a hole in the stall.  
Id.
 at ¶ 22.  He also claimed the department store acted outrageously by drilling the hole in the stall, despite evidence in the record that suggested the department store had, on several occasions, covered the hole.  
Id. 
at ¶ 21.  We held the plaintiff failed to show the defendants’ conduct was intentional, and ultimately, that the observer’s alleged conduct and the department store’s alleged conduct was not sufficiently extreme and outrageous.  
Id.
 at ¶ 27.

[¶16] In 
Lucas v. Riverside Park Condominium Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801, the plaintiff alleged members of a condominium association threatened him both verbally and physically.  
Id.
 at ¶ 16.  We again emphasized the Restatement standard we adopted in 
Muchow
, specifically that “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities” are not extreme or outrageous, and held the plaintiff’s allegations did not “rise to the level necessary to support an action for intentional infliction of emotional distress.”  
Lucas
, at ¶ 32.

[¶17] 
Muchow
 and its progeny repeatedly emphasize the strenuously high, “all possible bounds of decency” standard.  While G.K.T. may have raised a genuine issue of material fact that T.L.T. and T.K. conspired to foster a relationship between the child and T.K. to the possible detriment of G.K.T., this conduct is neither beyond all possible bounds of decency, nor so atrocious that it is intolerable in a civilized community.  Specifically, T.L.T.’s alleged threats to disclose to the child that T.K. was her biological father is not, as a matter of law, extreme or outrageous conduct.   
See
 
Muchow
, 435 N.W.2d at 924 (quoting Comment d. of the Reporter’s Notes of § 46) (“[L]iability clearly does not extend to mere . . . threats.”).  Assuming G.K.T.’s other allegations are true, he has failed to provide facts that demonstrate how fostering a relationship between his adopted child and the child’s biological father is extreme and outrageous conduct under 
Muchow
.  Reasonable people could not differ as to whether T.L.T. and T.K.’s conduct was extreme and outrageous.

III.

[¶18] Because, as a matter of law, the alleged conduct was not sufficiently extreme and outrageous to permit recovery, we affirm the district court’s judgment granting T.L.T.’s motion for summary judgment and dismissing G.K.T.’s complaint against T.L.T. and T.K. for intentional infliction of emotional distress.

[¶19] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom