2017 ND 14

**Jon David NORBERG, M.D. & Jon Norberg, M.D., P.C., Plaintiffs and Appellants**

v.

**Alonna Knorr NORBERG, Defendant and Appellee**

No. 20160098

Supreme Court of North Dakota.

Filed 2/16/2017

Bruce A. Schoenwald (argued) and Randolph E. Stefanson (on brief), 403 Center Avenue, Suite 302, P.O. Box 1287, Moorhead, Minnesota 56561–1287, for plaintiffs and appellants.

Charles A. Stock, 407 North Broadway, P.O. Box 605, Crookston, Minnesota 56716–0605, for defendant and appellee.

Sandstrom, Surrogate Judge.

[¶ 1] Jon Norberg appeals the district court order denying his motion for judgment as a matter of law or new trial. He argues collateral estoppel established as a matter of law Alonna Knorr Norberg's ("Knorr's") liability for his abuse of process, malicious prosecution, and defamation claims, and it should not have been redecided by the jury. He further argues Knorr's dismissal of her lawsuit prevented

her from raising affirmative defenses to his claims. Concluding collateral estoppel precluded relitigation of matters previously determined, we reverse and remand for a new trial.

## I

[¶ 2] This case is the result of a long history between Jon Norberg and Alonna Knorr. Once married, they divorced after Knorr alleged Norberg sexually abused her after drugging her with Propofol. Knorr's allegations resulted in criminal charges against Norberg, and a jury acquitted him of all charges in 2012.

[¶ 3] In the subsequent divorce case, the parties relitigated much of the same evidence included in Norberg's criminal trial. The divorce court found Knorr's allegations to be "untrue" and "nothing more than her attempt to get primary residential responsibility of the parties' children." The court awarded the father primary residential responsibility of the children. In distributing marital assets, the court further found the husband's financial ruin was a result of Knorr's false allegations. Knorr appealed, and we affirmed in Norberg v. Norberg, 2014 ND 90, 845 N.W.2d 348.

[¶ 4] Shortly before the divorce trial concluded, Knorr sued Norberg and other parties for medical malpractice, among other claims. Norberg counterclaimed for abuse of process, malicious prosecution, and defamation. Knorr eventually dismissed her claims against the other parties, and she later also dismissed her claims against Norberg. Norberg, however, continued pursuing his counterclaims against his former wife. Before trial, Norberg moved the court to prohibit Knorr from presenting evidence contrary to facts found in the divorce case and to order a directed verdict on Norberg's counterclaims establishing Knorr's liability as a matter of law. He argued his former wife

was attempting to relitigate facts that had already been decided in the earlier criminal and divorce cases. The court denied Norberg's motion, and the case went to trial. On all claims, a jury found Knorr not liable.

[¶ 5] After trial, Norberg moved for judgment as a matter of law or new trial. He reasserted his earlier arguments, and the district court again denied his motion. Norberg appeals, arguing the district court should have granted his motion for judgment as a matter of law because collateral estoppel established Knorr's liability on his abuse of process, malicious prosecution, and defamation claims. He also argues Knorr's dismissal of her claims effectively prevented her from asserting affirmative defenses against his claims.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Norberg's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] A denial of a motion for new trial is reviewed under the abuse-of-discretion standard. Grager v. Schudar, 2009 ND 140, ¶ 3, 770 N.W.2d 692. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." Id.

[¶ 8] Norberg argues two issues in which he contends the district court erred in denying his motion for new trial. First, he contends the district court erred by misapplying the doctrine of collateral estoppel. He contends the district court allowed the jury to find facts that were already found by the divorce court in the Norberg–Knorr divorce. Second, he argues Knorr's dismissal of her claims precluded her from

asserting affirmative defenses against his claims. Norberg first raised these issues before the district court in a pre-trial motion to prohibit Knorr from presenting evidence contrary to facts found in the divorce case and to direct a verdict on the issue of liability. He raised these issues again in his post-trial motion for directed verdict or new trial, and he adequately briefed these issues on appeal. Finally, Norberg conceded during oral argument he must succeed on both of these arguments for us to conclude the doctrine of collateral estoppel establishes Knorr's liability on his claims of abuse of process, malicious prosecution, and defamation.

## A

[¶ 9] The first issue is whether the district court erred by misapplying the doctrine of collateral estoppel. Whether the district court misapplied the doctrine of collateral estoppel is a "question of law, fully reviewable on appeal." Hanneman v. Nygaard, 2010 ND 113, ¶ 12, 784 N.W.2d 117. Norberg argues the jury was allowed to find facts that were already litigated and found in the earlier criminal and divorce cases.

[¶ 10] "Courts bar relitigation of claims and issues to promote the finality of judgments, which increases certainty, discourages multiple litigation, wards off wasteful delay and expense, and conserves judicial resources." Riemers v. Peters–Riemers, 2004 ND 153, ¶ 9, 684 N.W.2d 619. "[C]ollateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." Id. (quotation marks omitted).

[¶ 11] Collateral estoppel may apply to bar the relitigation of factual and legal issues that were already established in an earlier divorce proceeding. E.g., Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 386 (N.D. 1992); Riemers, 2004 ND 153, ¶ 10, 684 N.W.2d 619. For example, in Riemers, a husband and wife litigated during divorce proceedings whether domestic violence had occurred during the marriage. Id. The divorce court found the husband had committed a pattern of domestic violence against the wife. Id. The divorce court also found the wife had not committed domestic violence against the husband. Id. After the divorce, the husband sued his former wife, claiming she committed torts against him during the marriage and the divorce proceedings. Id. at ¶ 3. The former wife moved for summary judgment, and the district court granted her motion. Id. at ¶ 4. The court concluded collateral estoppel applied to bar the husband from relitigating whether his former wife had committed physical and emotional abuse against him during the marriage and divorce, because the divorce court had earlier found she had not committed such abuse against him. Id. On appeal, we held collateral estoppel applied to bar the husband's tort claims and affirmed the district court's grant of summary judgment. Id. at ¶¶ 17, 40.

[¶ 12] For collateral estoppel to bar relitigation of an issue in a new proceeding, the issue must satisfy four tests:

(1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?;

(2) Was there a final judgment on the merits?;

(3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and

(4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Id. at ¶ 9.

[¶ 13] The parties agree only the first test is at issue. The district court concluded the last three tests were satisfied, and the parties agreed with the court in their arguments on appeal. To meet the first test, it is necessary to determine whether the factual issues in the current case are identical to the earlier factual issues, that is, to "ascertain what facts were necessarily decided in the prior action with regard to the issue" and then "determine if [the non-movant] is attempting to relitigate those facts." State v. Lange, 497 N.W.2d 83, 86 (N.D. 1993); see Simpson v. Chicago Pneumatic Tool Co., 2005 ND 55, ¶ 9, 693 N.W.2d 612 (comparing factual allegations). In other words, the first step is to determine whether "identical factual allegations" are at stake in the two proceedings, and then to ascertain whether the facts were "necessarily decided." See, e.g., Bostick v. Flex Equip. Co., 147 Cal.App.4th 80, 96–97, 54 Cal.Rptr.3d 28 (2007).

[¶ 14] The question before this Court, therefore, is to determine (1) the relevant factual issues decided in the criminal and divorce cases; (2) whether those factual issues in the earlier cases were "necessarily decided"; and (3) whether the facts decided in the earlier cases are the facts decided by the jury in the current case. Before turning to the factual issues presented in the divorce case, we first conclude the factual issues in the criminal case are not identical to the factual issues in the current case, because the issues in the criminal case were decided upon a different burden of proof. State v. Wetzel, 2011 ND 218, ¶ 8, 806 N.W.2d 193 (collateral estoppel does not apply to factual issues decided upon a different burden of proof).

1

[¶ 15] Before determining whether the factual issues were necessarily decided, we first consider which factual issues were presented in the divorce case. Norberg asks this Court to consider the factual issues presented in the divorce court's judgment awarding primary residential responsibility of the parties' children to him and awarding him a disproportionate share of the marital assets. Those two decisions relied on factual issues explicitly and implicitly found by the divorce court.

[¶ 16] First, a significant contention between the parties during the divorce case was whether Knorr had falsely accused Norberg of sexually abusing her. The parties devoted significant time to proving their cases before the district court. Ultimately, the court found Knorr falsely accused Norberg of sexually abusing her, as evidenced by the court's judgment repeatedly referring to Knorr's "lies" in accusing Norberg of sexual abuse.

[¶ 17] The second factual issue was the motive behind Knorr's false allegations. The divorce court found Knorr's false allegations were "nothing more than her attempt to get primary residential responsibility of the parties' children." This finding establishes her motive in making her false allegations.

[¶ 18] The third factual issue was whether Knorr's false allegations resulted in criminal charges against Norberg. The court justified disproportionally distributing the marital assets to Norberg because it found Knorr's false allegations resulted in criminal charges against her former husband, which he then had to defend against by expending large sums of money.

[¶ 19] The fourth factual issue was whether Knorr's false allegations caused financial harm to Norberg. In the divorce,

the court declined to award Knorr spousal support at least in part because of the financial harm Knorr caused to the marital assets. On this issue, the divorce court said, "Concerning the parties' financial circumstances ... it was [Knorr]'s false allegations that dissipated much of the marital estate. Given the parties' current situation caused by [Knorr]'s falsehoods, [she] is not in need of any additional monies ... for spousal support."

[¶ 20] Moreover, throughout the divorce court's analysis on distributing marital debt, the court supported its conclusions by finding how "it would be unfair" to penalize Norberg by distributing certain debt to him. The court found it unfair because it found Knorr's actions created additional debt for the marital estate. For example, the divorce court stated, "[Knorr]'s lies about [Norberg]'s actions had devastating effects on [his] financial status. The resulting criminal charges not only required [him] to expend large sums of money to defend himself, but it deprived him of income opportunities." The divorce court also stated, "[Norberg]'s substantial income from his medical practice ended in late July of 2011 as a result of [Knorr]'s false allegations of unconsenting Propofol use and unconsented sexual abuse." These findings by the divorce court demonstrate the court considered Knorr's false allegations and the impact those allegations had on Norberg's finances, including that Knorr caused Norberg to lose income opportunities. On appeal of the divorce, we affirmed the court's findings, saying, "Alonna [Knorr]'s allegations caused Jon Norberg's income to be greatly diminished and required him to expend large sums of money to defend himself. The assets were dissipated as a result of Alonna [Knorr]'s actions." Norberg, 2014 ND 90, ¶ 29, 845 N.W.2d 348. Having considered the relevant earlier factual issues, we analyze whether those issues were "necessarily decided" by the divorce court.

2

[¶ 21] In Riverwood Commercial Park, LLC v. Standard Oil Co., 2007 ND 36, 729 N.W.2d 101, analyzing the "necessarily decided" prong, we quoted the following:

Issue preclusion operates to preclude the relitigation of only those issues necessary to support the judgment entered in the first action. Relitigation of an issue presented and decided in a prior case is therefore not foreclosed if the decision of the issue was not necessary to the judgment reached in the prior litigation....

For issue preclusion to apply, the issue must have been actually litigated and have been essential to the prior decision. Judgment in the prior action must therefore have been dependent on the determination made of the issue in question. When the jury or the court makes findings of fact, but the judgment is not dependent on those findings, they are not conclusive between the parties in a subsequent action based on a different cause of action.

Id. at ¶ 21 (quoting 18 James W. Moore, Federal Practice § 132.03[4][a] (3d ed. 2006)). "The purpose of the 'necessarily decided' requirement 'is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.'" Id. (quoting 18 Moore, supra, at § 132.03[4][f]). In other words, to determine whether a factual issue was "necessarily decided" in the earlier case, we analyze whether the factual issues were essential to the judgment in the earlier case.

[¶ 22] As discussed above, the district court's judgment awarded primary resi-

dential responsibility of the parties' children to Norberg and disproportionately distributed the marital property, awarding Norberg the majority of the assets. The divorce court's judgment awarding primary residential responsibility to Norberg relied in part on two findings: Knorr's falsely accusing Norberg of sexual abuse, and her falsely accusing him in an attempt to get primary residential responsibility of the children. The divorce court used these facts throughout its analysis of the best interest factors under N.D.C.C. § 14–09–06.2. Knorr's false allegations were essential to the judgment in supporting the court's ultimate conclusion to award primary residential responsibility to Norberg, and Knorr's motivation in making false allegations was essential because it explained why she made them.

[¶ 23] The divorce court's judgment disproportionately distributing the marital assets relied on several findings: Knorr's false allegations resulted in criminal charges against Norberg, and her false allegations caused financial harm to Norberg. The court had to justify with factual findings its award of a disproportionate share of the marital assets to Norberg. These factual findings used by the court to justify its award demonstrated Knorr caused the dissipation of the marital assets by her false allegations. We affirmed these findings in <u>Norberg</u>, saying, "The assets were dissipated as a result of Alonna [Knorr]'s actions." <u>Norberg</u>, 2014 ND 90, ¶ 29, 845 N.W.2d 348. The court's finding that the false allegations resulted in Norberg's need to defend himself against criminal charges was therefore essential to the judgment. Knorr's causing Norberg's losses, therefore, was also an essential component of the judgment. By concluding Knorr's actions dissipated the assets, and offsetting her conduct by awarding Norberg more assets, the court found she caused Norberg's losses. Without these

findings by the district court to justify its disproportionate award of the marital assets, we could not have affirmed the judgment. For this reason, the factual issues were necessarily decided.

### 3

[¶ 24] We now consider whether the factual issues in the divorce case are identical to the factual issues in the present case. In the present case, the parties disputed facts that Norberg had to prove to succeed on his claims of malicious prosecution, abuse of process, and defamation. We analyze the elements of those claims to ascertain whether the facts in the present case are identical to those in the divorce case. First, the elements of malicious prosecution are the following:

1) Institution of a criminal proceeding by the defendant against the plaintiff;

2) Termination of the criminal proceeding in favor of the accused;

3) Absence of probable cause for the criminal proceeding; and,

4) Malice.

<u>Kummer v. City of Fargo</u>, 516 N.W.2d 294, 298 (N.D. 1994). "Institution of criminal proceedings for the tort of malicious prosecution involves taking some active part in instigating or encouraging the prosecution, as by advising or assisting another person to begin the proceeding, or taking any active part in directing or aiding the conduct of the case." <u>Larson v. Baer</u>, 418 N.W.2d 282, 287 (N.D. 1988) (citing Prosser and Keeton, <u>Law of Torts</u> § 119 at 872 (5 ed. 1984)). "Malice" includes "a reckless disregard of another's rights and the consequences that may result," and it "is not limited to a spiteful, malignant, or revengeful disposition and intent; it includes wrongful and improper motives as well as intent to commit a wrongful and improper

act." Stoner v. Nash Finch, Inc., 446 N.W.2d 747, 756 n.7 (N.D. 1989) (jury instruction). A person may be liable for malicious prosecution if that person "gives information to authorities with knowledge of [the information's] falsity." Larson, 418 N.W.2d at 287 (citing Prosser and Keeton, supra, at 873).

[¶ 25] Here the facts to establish the elements of malicious prosecution involve whether Knorr knowingly made false accusations to law enforcement and those false accusations resulted in criminal charges against Norberg. These facts also include her aiding state prosecutors by testifying against Norberg in his criminal trial, Norberg's acquittal of those charges, and whether her conduct was malicious. Yet, the divorce court found these facts as discussed earlier. The court also found she knew her accusations were false, because it found she had made false accusations as a ploy to obtain custody of her children. The court further found facts sufficient to establish she acted with malice, because it found she had the improper motive of lying to law enforcement to obtain custody of her children. These facts found by the divorce court also would have established the elements of malicious prosecution.

[¶ 26] Second, we have recognized the elements of abuse of process are the following:

The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad

intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Volk v. Wisconsin Mortgage Assurance Co., 474 N.W.2d 40, 43 (N.D. 1991) (quoting Prosser and Keeton, Law of Torts § 121 at 898 (5th ed. 1984)). Here the facts used to establish the elements of abuse of process involved whether Knorr had an ulterior purpose in initiating a legal proceeding and improperly acted on that ulterior purpose. As we discussed above, the divorce court found Knorr made false accusations solely because of her desire to obtain custody of the children. The divorce court, therefore, already found she had an ulterior purpose and improperly acted on that purpose by falsely accusing Norberg to law enforcement. These facts found by the divorce court also would have established the elements of abuse of process.

[¶ 27] Third, the elements of slander, a subtype of defamation, can be the following: (1) false and unprivileged publication other than libel, (2) which charges "any person with crime, or with having been indicted, convicted, or punished for crime." N.D.C.C. § 14–02–04. "Allegedly defamatory matter communicated to a third party is a publication." Emo v. Milbank Mut. Ins. Co., 183 N.W.2d 508, 512 (N.D. 1971). Here the facts used to establish the elements of slander, a subtype of defamation, involve whether Knorr made a false and unprivileged report of a defamatory matter to a third party and this false report resulted in Norberg's being

charged with a crime. The divorce court found these facts in the earlier proceeding, because it found Knorr falsely reported to law enforcement that Norberg had sexually abused her and this report resulted in Norberg's criminal charges. These facts found by the divorce court also would have established the elements of defamation.

[¶ 28] The district court, in concluding the issues were different, erred by comparing the legal issues rather than the factual issues. Simpson, 2005 ND 55, ¶ 11, 693 N.W.2d 612 ("Although the [plaintiffs] raise different theories of recovery in this case, res judicata and collateral estoppel apply even though the subsequent claims may be based upon a different legal theory."). At Norberg's motion in limine hearing requesting the court to prevent the jury from relitigating the above-mentioned facts, the court concluded the issues were different. Before reaching this conclusion, the court acknowledged none of the cases had the same judge and cautioned, "I'm not familiar with all the facts and information that was introduced" at the earlier cases. He went on to say that "the issues in the divorce case, in an equitable proceeding, would not have been the same essential elements that are claimed in the claims for relief here." The question, however, is not whether the same essential elements of abuse of process, malicious prosecution, and defamation were decided in the earlier case. Id. The question is whether the above-mentioned factual issues that would establish the essential elements of abuse of process, malicious prosecution, and defamation were decided in the earlier case.

[¶ 29] Finally, Knorr argues her right to trial under the North Dakota Constitution prevents the application of collateral estoppel to a jury trial for a factual issue decided by a bench trial. Knorr contends collateral estoppel, if applied here, is a judicial construction preventing her from enjoying her right to a jury trial. The Supreme Court of the United States has sanctioned the application of collateral estoppel in this context, see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 333–35, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and our neighboring state agrees collateral estoppel may apply here, Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 118 (Minn. 1991) ("If, however, the nonjury, statutory termination proceeding produces findings which are entitled to judicial recognition and finality, the constitutional right to a jury trial is not violated."). While Knorr is correct that she is constitutionally entitled to a jury trial on any triable issue, N.D.R.Civ.P. 38, the application of collateral estoppel means the barred issues are no longer triable, see Parklane, 439 U.S. at 334–35, 99 S.Ct. 645. For these reasons, we conclude the district court erred by refusing to apply the doctrine of collateral estoppel to prevent the jury from relitigating facts established in the earlier divorce proceeding.

## B

[¶ 30] The second issue in which Norberg argues the district court erred by denying his motion for judgment as a matter of law is whether Knorr's dismissal of her claims with prejudice and on the merits prevented her from asserting affirmative defenses against Norberg's claims. Norberg cites no authority stating a party's dismissal of her claims with prejudice and on the merits revokes that party's ability to affirmatively defend against the opposing party's claims. See VanCleve v. City of Marinette, 2003 WI 2, ¶ 36, 258 Wis.2d 80, 655 N.W.2d 113. We are not persuaded by his arguments.

## C

[¶ 31] We now turn to whether the above-mentioned facts establish Knorr's li-

ability for Norberg's claims of abuse of process, malicious prosecution, and defamation. Knorr argues collateral estoppel does not establish her liability for abuse of process, malicious prosecution, and defamation, because she affirmatively asserted comparative fault as her defense to those claims. Under the doctrine of comparative fault, the factfinder finds with percentages each party's fault. See N.D.C.C. § 32-03.2-02. For example, in a negligent action, under comparative fault a jury could find the plaintiff was 40% at fault for his injuries while the defendant was 60% at fault for causing the plaintiff's injuries. E.g., Day v. Gen. Motors Corp., 345 N.W.2d 349, 354 (N.D. 1984).

[¶ 32] Here the divorce court's order did not find the exact fault of either party. Although the divorce court found Knorr generally caused Norberg's losses, the record does not reflect the divorce court assigned this exact fault. This lack of exact fault is the reason Norberg conceded at oral argument that he had to succeed in both his arguments on appeal for us to conclude collateral estoppel establishes Knorr's liability for Norberg's claims. Knorr's affirmative defense of comparative fault prevents collateral estoppel from establishing her liability for Norberg's claims.

### III

[¶ 33] Having concluded the district court erred by misapplying the doctrine of collateral estoppel, we reverse and remand for a new trial on Norberg's abuse of process, malicious prosecution, and defamation claims. The district court shall instruct the jury to accept as fact that (1) Alonna Knorr lied when she reported she was administered Propofol without her knowledge and falsely alleged Jon Norberg sexually abused her; (2) she knew these allegations were false when she reported them to law enforcement and throughout her cooperation with the State in its criminal prosecution of Norberg; (3) she was responsible for Norberg's indictment and subsequent criminal trial relating to those false allegations of sexual abuse; and (4) Norberg suffered financial harm as a result of Knorr's false allegations. The district court shall prohibit her from introducing or eliciting contrary testimony or other contrary evidence.

[¶ 34] Dale V. Sandstrom, S.J.

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

I concur in the result.

Lisa Fair McEvers

[¶ 35] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.